May it please the Court, my name is Aruna Suri and I'm appearing on behalf of Petitioner Pervez Ghahremani. Over six years after gaining lawful permanent residence status in this country, Mr. Ghahremani lost that status after proceedings in immigration court as a result of his counsel's ineffective assistance, which Mr. Ghahremani unfortunately did not discover until over three years after he lost his permanent residency. Three years and how many lawyers? After a total of five attorneys, Your Honor. And you're, what number are you? We're the fourth attorney. Excuse me, we're the fifth attorney. So after four attorneys, that's right. After four attorneys. So is the rule then that as long as he keeps going to seek lawyers if he's dissatisfied with the prior one, he's exercising due diligence until he finally finds one who says what you really have here is a claim of ineffective assistance of counsel? Not necessarily. I think it would depend on what the record as a whole indicates. Well, of course, the problem is that we've got some intervening lawyers here who didn't say that he had an ineffective assistance of counsel. Right. So we have to find that they were ineffective too by not raising the issue that you now seize upon. Right. I mean, I think in this case. So everybody committed ineffective assistance of counsel. Lawyers 1, 2, 3, and 4. Right. And that's not something that's new to this Court, certainly. I mean, this Court has considered many cases where there's been a string of immigration attorneys committing ineffective assistance of counsel. In what way was the lawyer ineffective? I'm not clear what the lawyer did that was deficient. Well, the merits of the actual ineffective assistance claim are not necessarily before this Court. That's right. I mean, you're just saying there's ineffective assistance. You haven't demonstrated that there's any ineffective assistance. Yeah. I mean, I don't think the Board even reached that issue. But what Mr. Gehrmani alleges in his motion to reopen is that his attorney, as we were discussing in the last case, has completely failed to prepare him for his 212C application and what testimony would be required, what evidence would be required. 212C is a discretionary form of relief, and it's extremely important for a respondent as an alien in immigration court who's applying for 212C relief to be able to submit, to convince the judge that his positive equities outweigh whatever crime he's convicted of. And in this case, all his attorney did was submit some medical documents relating to his wife and did not explain to Mr. Gehrmani at all what other positive equities could have been available. He states in his declaration, in support of his motion to reopen, various other types of documents which would have been available if only his attorney had asked him. His attorney had apparently also advised him. It would be that those, those, that explanation would override the IJ's finding that because of the fact that he committed the criminal offenses shortly after he entered the United States, that that somehow outweighs the impact of the two felony convictions. Exactly. Because, right, the only finding of the immigration judge which, which is sort of prejudiced Mr. Gehrmani is the finding that he's not deserving of 212C relief as a matter of discretion. Interestingly, the immigration judge actually had another reason why he denied 212C relief. He actually pretermitted it as a matter of law on a complete misconstruction of the law. And the board reversed that point. Well, they are both crimes of moral turpitude, right? There's no, there's no argument about the definition that applies to fraud cases. In this case, actually, the charge against Mr. Gehrmani was he was charged as an aggravated felon for having been convicted of a crime of fraud. So he was not charged. They are all, aren't they both crimes of moral turpitude as well? Because they involve deception and trying to obtain money by false pretenses. Probably. Yeah, I would say so. So turning, turning to the first question, I guess, of jurisdiction, the parties seem to agree that if the petition for review challenging the denial of Mr. Gehrmani's motion to reopen raises questions of law or constitutional claims, this court has jurisdiction to review the board's decision. Mr. Gehrmani's petition for review primarily raises a question of law, and that is that the board properly applied, is whether the board properly applied the legal doctrine of equitable tolling to the undisputed facts in this case. In rejecting Mr. Gehrmani's motion to reopen as untimely, the board provided in just one paragraph its determination that Mr. Gehrmani had failed to exercise due diligence in filing his motion to reopen and was therefore ineligible for equitable tolling. The board's decision, however, was based on a misconstruction of the statute and its own regulations and a misapprehension of the undisputed facts in this case. Why shouldn't we follow the lead of the First Circuit in declaring that this is inherently a factual determination over which we do not have jurisdiction to review? Because the First Circuit in the decision, Bokai, which is the one I'm guessing you're referring to, in that case the board was functioning under a starkly different sort of jurisprudence than this circuit currently has. At the time that Bokai was decided, and I think still to date, the First Circuit did not recognize equitable tolling as a relief for an untimely motion to reopen. And that is really the key because the significant distinction is that in this circuit, of course, this circuit has for long recognized equitable tolling as relief in cases where there's an untimely motion to reopen. And significantly in this circuit, in reviewing equitable tolling decisions by the board, the court seems to have always applied sort of a de novo standard in determining whether or not the court But the question that the First Circuit was addressing was due diligence, which is the So whether or not the First Circuit calls it equitable tolling, it's still a due diligence inquiry, is it not? Well, I think the distinction is that the First Circuit was construing it, the issue, as a factual issue. And my question to you is why isn't it a factual issue here? I mean, the board basically made a factual determination that your client did not engage in due diligence. Because in And therefore, he is not entitled to equitable tolling. So I guess I'm misunderstanding your argument as to why the Bokai decision is not squarely on point with the analysis that we're engaging in here. Because the First Circuit's determination that it was deciding a question of law is in direct contravention to this circuit's practice thus of considering equitable tolling cases or the issue of equitable tolling as a question of law. Is it a mixed question of law and fact? Because I don't see how you could decide the issue without looking at the facts of the case to find out why the petitioner waited so long in order to raise the claim. It can be a question of law and fact. However, in this case, in Mr. Ghirmani's case, I think it's a pure question of law because the facts are undisputed. There's really no in the motion. The question is due diligence. And that's a factual inquiry. The question is, why did he wait to go through five different lawyers before he raised an ineffective assistance of counsel claim? And was he diligent in going through all these lawyers and waiting as long as he did to file his motion to reopen? Right. But the facts underlying that determination, the facts to be considered in making that determination are undisputed. Well, there's no dispute as to the amount of time that's passed. Right. And as Judge Silverman inquired, there is some question as to whether or not he has any facts to support an ineffective assistance of counsel claim, which may explain why none of the four prior lawyers thought that it was a legitimate issue. But that's what the board did. It looked at all of that. And it said, there's no due diligence here. Therefore, as a matter of law, there's no entitlement. And I don't understand how that's different from what the First Circuit was looking at in Bocage. Well, I mean, first of all, the First Circuit hardly goes into any analysis in its decision. It doesn't look like the litigants in that case really brought up the issue of whether or not constitutional claims are raised or whether or not there's constitutional implications to the First Circuit's decision. But more importantly, I think what's important to realize is that the context under which the First Circuit was working under is completely different from this circuit's law. And let me try to give an example. In Sokup-Gonzalez, you know, because I should say at the outset that this court doesn't seem to have ever squarely dealt with this issue as to whether the question of equitable tolling is a legal or a factual question or is it a mixed question of fact or law. But from reading cases starting with Sokup-Gonzalez and its progeny, you know, Iturribarria, Rodriguez-Larez, as well as more recently, Wray, all these cases seem to be applying a de novo standard in reviewing the board's denial of a motion to reopen as untimely on grounds that the alien was not deserving of equitable tolling. I thought we reviewed that on an abuse of discretion standard. The motion. That equitable tolling can establish just cause. The motion to reopen was reviewed on an abuse of discretion standard. But the question of whether equitable tolling should be applied, in Sokup-Gonzalez, the court decided, quote, the equitable tolling doctrine is read into every federal statute of limitations. That's in a way implying that it derives from the statute itself because the very concept derives from the statute because it's read into the statute of limitations. And then it went on to say, after going into the specific facts of that case, concluded that in that case the board, quote, should have been, I mean, excuse me, the statute of limitations, quote, should have been told by the board. It didn't review it for a substantial evidence standard or, you know, as would be done in a case involving pure questions of fact. Rather, it decided whether or not the board erred as a matter of law. But why shouldn't we apply it the same way we do other abuse of discretion decisions and declare that by definition, if a legal error is committed, it constitutes an abuse of discretion? That's actually exactly. I've probably gone about a very roundabout way of doing that. But that's exactly what I'm getting at. But that doesn't convert all reviews of denials to reopen into de novo review, which is where you were going, I think, with your argument. No. No, Your Honor. Let me clarify. I don't think that the motion to reopen itself should be reviewed on a de novo review standard. However, in a case like this where there is a finding that equitable tolling should not apply to the motion to reopen, that's a question that derives directly from the statute, implicates the statute or its interpretation. Equitable tolling is a judge-made doctrine. There's no equitable tolling statute, right? Excuse me. I should say it's a doctrine that derives, that relates to the interpretation of the statute. Essentially, whether or not there is just cause for not complying with the time deadline under the statute. That's what equitable tolling addresses. Yes. But what I would like to stress is that in considering equitable tolling determinations by the Board, this Court has repeatedly applied a de novo standard and viewed the record as a whole to determine whether the Board erred as a matter of law in failing to apply equitable tolling. And then, after deciding that, then reviews the motion to reopen on an abuse of discretion standard. Okay. I would also like to just quickly add that I believe that this case, if the Court disagrees and finds that, you know, we're dealing with a mixed question of law and fact, or that we're dealing with a factual, with a case where there's purely factual issues, I think there's also an important point to be made that this case involves a constitutional claim as well. And this Court should take jurisdiction on that point. I think it's important to view the statute that we're dealing with, 242A2D, in the context of the purpose of the REAL-ID Act, which is where this provision derives from. And in looking at the purpose of the REAL-ID Act, we know that the purpose was to expand, not restrict judicial review of constitutional claims. And in the congressional reports relating to the REAL-ID Act, Congress made very, very clear that the purpose of 242A2D was to provide jurisdiction on cases where aliens were losing jurisdiction. We understand that. Okay. You're going over your time. Oh, I apologize, Your Honor. Thank you. We're just deducted from the government. May it please the Court. My name is Ryan Bounds. I represent the respondent in this case, the Attorney General of the United States. I'd like to start, Judge Fragerson, by congratulating you on your 29 years on the bench. Oh, you're very kind. I won't need all of my time. I just want to emphasize the relevance, as Judge Tolman indicated, of the Bukai decision. That's 29 years in this case. Exactly. I'm sorry. You have 29 years of service to this Court. I'm 65. Indeed. The Bukai decision does directly bear on the Court's jurisdiction to review the Board's denial of the motion to reopen in this case. It's exactly the same fact pattern and allegation of ineffective assistance that led to the question of whether equitable tolling should apply. Although the counsel for the petitioner maintains that the First Circuit should be distinguished because it doesn't have an equitable tolling doctrine in this context, the Circuit, for purposes of that case, specifically and explicitly assumed that equitable tolling would apply, and then determined that because of the factual determination, there was no jurisdiction to review the case under 242A2C. I should also note that the other cases that the petitioner cites in support of the generalized notion, this Court reviews de novo, or for an abuse of discretion, equitable tolling decisions from the Board of Immigration Appeals. All of those cases of which I'm aware do not relate to circumstances like this one, where the Court has a jurisdictional bar for reviewing the decision in the first instance. This is an aggravated felon. The petitioner arrived in 1990, and then within six months launched on a three-plus-year campaign of fraud and aggravated felonies that earned him an order to show cause why he should not be deported in 1996. It's now 10 years later. This Court has had jurisdiction, or this matter has been pending in this Court now for two years. And this goes against the very purpose that Congress sought to accomplish with ERIRA in 1996, and to clarify with the REAL ID Act in 2005 that petitioners who are convicted of aggravated felonies should not have the opportunity to lay their removal with gratuitous petitions to this Court. Let me ask you a practical question. He was granted withholding of removal, wasn't he? Yes. Is he going to go anywhere? Technically, he is removable to a third country, although he would have an opportunity if that third country presented similar problems to challenge that removal. But he is not removable to Iran, at least in the absence of changed circumstances. I also would like to point out, not only does the Bukhai decision from the First Circuit directly bear on this case, but that decision sided, and this Court has decided the Ramadan case, which relates to very similar circumstances. That case decided that it was a predominantly factual question, and therefore that this Court does not have jurisdiction to review whether changed circumstances justified a violation of the one-year bar and petitioning for asylum. In light of that decision, and in light of the Bukhai Court's decision following that decision, that this exact question, whether the petitioner exercised due diligence, is a factual question, is not one that is a question of law or a constitutional claim for purposes of the jurisdictional bar under 242A2C. And therefore, this Court does not have jurisdiction to address the question. I also want to make very clear that even if the Court were to review whether due diligence had been shown by the petitioner, the petitioner manifestly did not demonstrate due diligence as the Board held in its denial of the motion to reopen. The allegations on which the motion to reopen were made only say that the petitioner was aware, or the petitioner believed that his counsel before the immigration judge two and a half plus years before had not brought out his remorse for his underlying aggravated felonies. The petitioner was there when the immigration judge entered the decision, the oral decision, saying that the petitioner had failed to demonstrate sufficient remorse for his aggravated felonies, and the petitioner hired new counsel immediately after that decision was issued. There's no conceivable way the petitioner can now claim that he was unaware until two and a half years later that he had been inadequately prepped for his testimony, which is his theory for why there was ineffective assistance. If the Court has no further questions, I'll surrender my time. Thank you. You mentioned that we've had the case for two years. You know, the reason it takes so long for these cases to come up is that, I think it was last year or the year before, the Attorney General gave us 8,000 of these cases. Do you know that? I do understand the Board of Immigration Appeals is trying to work through the backlog that had been generated over the course of the year. But they can't work through it by just concurring, concurring, concurring. And we get them all, see. We used to get about 800 a year, and I think in one fell swoop we got something like 8,000. I do appreciate, and the Attorney General certainly appreciates, the burden that the immigration docket imposes on this Court, which is one of the reasons why the Attorney General is attempting to vindicate Congress's effort to limit jurisdiction to review gratuitous petitions for review from aggravated felons like the petitioner here. The Court would only be doing itself a disservice by reaching out and asserting jurisdiction in this case where it plainly has none. No, they could do us a favor by reinvigorating the VIA to about 30 members instead of cutting them back to seven or eight. And because they operate it as a very good screening mechanism. I believe that the Attorney General has directed the Board to expand its permanent size by a number of judges. So that will help alleviate that problem. And also I would note that in this particular case the Board addressed all the decisions on the merits and wrote opinions on these cases. That's a good anniversary present. Congratulations. Thank you. Thank you. All right. This matter is submitted. We'll pick up the next case. Sanchez v. Cain. Did you read the New York Times today? I did. Huh? What? They're not taking enough cases? Yeah. They're out of cases. They're out of cases. Yeah. I think we ought to keep them. I think we're doing a pretty good job of keeping them. No, no. You want conflict so they've got things to do. Yeah. All right. Ready to roll.
judges: Pregerson, Silverman, Tallman